# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| DEMOLITION CONTRACTING & DISPOSAL | § <br> § <br> §   Civil Action No. 4:18-cv-270 |
| v. | §   Judge Mazzant <br> § |
| BEAUTICONTROL, INC. | § <br> § |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Interpleader Defendants B.F. Equipment & Scrap Metal ("B.F. Equipment") and Frank Adams' ("Adams") Amended Motion to Dismiss (Dkt. #17). After carefully considering the motion, and the corresponding response (Dkt. #22) and reply (Dkt. #23), the Court concludes that the motion should be granted.

## BACKGROUND

Plaintiff Demolition Contracting & Disposal ("Demolition Contracting") is a New Jersey sole proprietorship that buys and sells equipment for the manufacture and packaging of drugs, foods, and beauty products, among other goods. Demolition Contracting alleges that, in September 2017, it contracted with Defendant Beauticontrol, Inc., a cosmetics and skincare product manufacturer, to purchase manufacturing equipment (the "Equipment") from a Beauticontrol facility in Carollton, Texas, which was shutting down. Under this alleged contract, which purports to "be governed by the laws of the State of New Jersey" (Dkt. #1, Exhibit 1 at p. 8), Demolition Contracting would provide Beauticontrol with an initial $20,000 deposit in early-October of 2017 before paying an additional $912,900 a few weeks later. Acting on Demolition Contracting's behalf, B.F. Equipment and Adams, New Jersey citizens, subsequently wired Beauticontrol $20,000 that would go toward the purchase of the Equipment (Dkt. #17, Exhibit 1). Adams

explains in a sworn affidavit that he and B.F. Equipment were willing to help facilitate this transaction because they had intended to purchase the Equipment from Demolition Contracting after it was shipped to New Jersey.

The parties agree that, on receiving the $20,000, Beauticontrol did not sell Demolition Contracting the Equipment. Demolition Contracting filed suit against Beauticontrol thereafter for breach of the alleged contract. Beauticontrol denies being aware that Demolition Contracting "claimed to have entered into a contract to purchase equipment from Beauticontrol" (Dkt. #6 at p. 11) and, instead, contends that it had no idea why the Interpleader Defendants wired it $20,000 and that it tried to return the $20,000 to either Demolition Contracting or B.F. Equipment/Adams, to no avail. On this basis, Beauticontrol brings cross-claims for interpleader against B.F. Equipment and Adams (collectively, the "Interpleader Defendants"), seeking to deposit the $20,000 in the Court registry in exchange for relief from any claims or obligations from Demolition Contracting, B.F. Equipment, and/or Adams in regard to that amount. B.F. Equipment and Adams, however, argue that the Court lacks personal jurisdiction over either of them.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a federal court sitting in diversity may exercise jurisdiction over a non-resident defendant only if permitted under state law. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000) (citing Fed. R. Civ. P. 4(e)(1), 4(h)(1), 4(k)(1)).

Plaintiff bears the burden of establishing that the non-resident Defendant has contacts with the forum state sufficient to invoke the jurisdiction of this Court. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005). If there is no evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the party asserting jurisdiction must merely present facts sufficient to constitute a prima facie case of personal jurisdiction. *Freudensprung v. Offshore Technical*

*Servs., Inc.*, 379 F.3d 327, 342-43 (5th Cir. 2004). The prima facie showing may be established by the pleadings, depositions, affidavits, or exhibits of record. *See Guidry v. U.S. Tobacco Co., Inc.,* 188 F.3d 619, 625 (5th Cir. 1999). The Court must accept as true the plaintiff's uncontroverted allegations and resolve any factual conflicts in favor of the plaintiff. *Freudensprung*, 379 F.3d at 343. However, the Court is not required to credit conclusory allegations, even if uncontroverted. *Cent. Freight Lines, Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

In deciding whether there is personal jurisdiction over a non-resident defendant, a two-step analysis is conducted. *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, absent a controlling federal statute regarding service of process, the court must determine whether the long-arm statute of the forum state permits the exercise of jurisdiction. *Id.* Second, the court must decide whether the exercise of jurisdiction comports with due process. *Id.* The Texas long-arm statute extends to the limits of due process under the Constitution. *Command-Aire Corp. v. Ontario Mechanical Sales and Service, Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). As a result, the determination of a non-resident's amenability to personal jurisdiction under the Texas long-arm statute is a federal style inquiry as to whether jurisdiction comports with federal constitutional guarantees. *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990). To meet the requirements of the due process clause, the non-resident must have some minimum contacts with the forum which result from an affirmative act or acts, and it must not be unfair or unreasonable to require the non-resident to defend the suit in the forum state. *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir. 1985); *NTE Aviation, Lt. v. LIAT (1974) Ltd.*, 561 F. Supp. 2d 687, 689 (E.D. Tex. 2007).

Beauticontrol contends that the Court has specific jurisdiction over the Interpleader Defendants.[1] Specific jurisdiction exists where the plaintiff alleges a cause of action which grows out of or relates to a contact between the defendant and the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The Fifth Circuit follows a three-step analysis in determining whether a court has specific jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being hauled into court.'" *Id.* (quoting *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006)).

## ANALYSIS

The Interpleader Defendants could not have reasonably expected to be hauled into court in this case. Beauticontrol argues that the Interpleader Defendants purposely directed their activities to Texas by wiring it the $20,000. It notes that Beauticontrol was based in Texas at the time—even if its principal place of business is now in Florida—and that the $20,000 was purportedly wired to purchase equipment in Texas. These contacts are insufficient.

The Fifth Circuit's decision in *Freudensprung* is illustrative. In that case, Offshore Technical Services Inc. ("OTSI") agreed to supply Willbros West Africa, Inc. ("WWA") with

---

[1] The Court therefore does not discuss whether general jurisdiction would exist over the Interpleader Defendants.

4

personnel to perform offshore drilling work. OTSI subsequently arranged for Fred Freudensprung to work for WWA through a separate agreement between OSTI and Freudensprung. Freudensprung was injured while performing pipeline work for WWA, pursuant to his agreement with OSTI, prompting him to file suit in the Southern District of Texas against both OTSI and WWA. Thereafter, WWA filed a motion to dismiss for lack of personal jurisdiction, which the district court granted. On appeal, Freudensprung argued that WWA had purposely availed itself of the benefits and protections of the state of Texas by:

> (1) contracting with OTSI, a Texas-based corporation, pursuant to the Offshore Personnel Supply Agreement;
>
> (2) contemplating arbitration of any disputes with OTSI arising under that contract in Houston, Texas;
>
> (3) initiating and contemplating a long-term business relationship with OTSI;
>
> (4) engaging in communications with OTSI in developing and carrying out that contract; and
>
> (5) wiring payments to OTSI in Texas.

*Freudensprung*, 379 F.3d at 344. The Fifth Circuit was unmoved, reasoning, in pertinent part, that:

> The significance of these alleged minimum contacts is severely diminished [since] the contract at issue specified that it was to be governed by English law and that the material portions of the contract, which contemplated the supply of personnel to WWAI for its projects in West Africa, were to be performed in West Africa, not Texas.

*See id.* (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986); *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983); *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 147 (5th Cir. 1985)).

Adams and B.T. Equipment's contacts with Texas are even weaker than the insufficient contacts in *Freudensprung*. Although WWA wired funds to and communicated with a Texas

resident to execute and perform an agreement it reached with a Texas resident for a long-term business relationship, in this case, there is no indication that Adams and B.T. Equipment ever purposely directed any contacts to contract with a Texas resident. To the contrary, Adams states in an undisputed affidavit that he and B.T. Equipment only wired the $20,000 to Beauticontrol so that they could buy the Equipment from Demolition Contracting after Demolition Contracting purchased it from Beauticontrol pursuant to the alleged contract between those parties. That is, Adams and B.T. Equipment only made contact with Texas, through one wire transfer, because Demolition Contracting happened to allegedly contract with Beauticontrol, instead of a different seller in any other state.[2] This is precisely the type of "random, fortuitous, or attenuated" connection that make the exercise of personal jurisdiction improper.[3] *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (explaining that "purposeful availment" requires that "the defendant *himself* . . . create a 'substantial connection' with the forum state" and that the mere presence of "'random,' 'fortuitous,' or 'attenuated' contacts" with the forum state is insufficient) (emphasis in original).

Additionally, like in *Freudeunsprung*, any significance of the contacts Adams and B.T. Equipment made in facilitating the execution of the alleged contract between Beauticontrol and Demolition Contracting is substantially undermined by the contract's inclusion of a New Jersey choice of law provision. Such a provision suggests that the parties tried to minimize any contacts

---

[2] Beauticontrol has, in fact, since moved to Florida, thereby weakening Texas' interest in the interpleader claims. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) ("A State generally has a 'manifest interest' in providing *its residents* with a convenient forum for redressing injuries.") (emphasis added).

[3] Indeed, the Fifth Circuit has repeatedly found that payments and/or communications a defendant has made to execute a contract, without more, do not establish minimum contacts. *See Gulf Coast Bank & Trust Co. v. Designed Conveyor Systems, L.L.C.*, 717 F. App'x 394, 399 (5th Cir. 2017) ("DCS's mere sending of payment to Louisiana does not constitute purposeful availment to establish minimum contacts."); *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) ("We have held that communications relating to the performance of a contract themselves are insufficient to establish minimum contacts."); *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985) ("Spademan's mailing of payments to the plaintiffs in Texas can hardly be termed significant in terms of determining purposeful availment of the benefits of the forum state's laws.").

they had with Texas rather than invoking the protection of Texas laws. *Compare Holt Oil*, 801 F.2d at 778 ("Although the contractual relationship between Holt and Harvey may have been cemented in Texas, the significance of this fact is diminished by the contractual provision specifying that Oklahoma law would govern the agreement.") *with Burger King*, 471 U.S. at 482 (reasoning that a Florida choice of law provision reinforced that the defendant purposely availed himself of the benefits and protections of Florida laws). Moreover, the alleged contract does not anticipate that Adams or B.T. Equipment would have any other interaction with Texas. Adams and B.T. Equipment, instead, planned to purchase the equipment from Demolition Contracting, a New Jersey resident, after the Equipment was already in New Jersey. *See Freudensprung*, 379 F.3d at 345 (noting that the contract "contemplated the supply of personnel to WWAI *for its projects in West Africa*") (emphasis added). Personal jurisdiction over Adams and B.F. Equipment is lacking for these reasons.[4]

## CONCLUSION

The Interpleader Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #17) is **GRANTED**. Accordingly, Beauticontrol's claims for interpleader against Adams and B.F. Equipment are **DISMISSED WITHOUT PREJUDICE**,[5] and the Clerk is **DIRECTED** to terminate the Interpleader Defendants as parties in this action.

**SIGNED this 23rd day of October, 2018.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[4] The Court therefore need not address Beauticontrol's arguments on whether exercising personal jurisdiction would be fair and reasonable.

[5] Although the Court could have transferred Beauticontrol's claims for interpleader to an appropriate court, rather than dismissing them for lack of personal jurisdiction, *see Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013), Beauticontrol has indicated that it would prefer a dismissal (Dkt. #26).